**NOT FOR PUBLICATION**

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
                                           :
AT&T CORP.,                                :  CIVIL ACTION NO. 99-2578 (MLC)
                                           :
     Plaintiff,                            :  MEMORANDUM OPINION
                                           :
     v.                                    :
                                           :
JMC TELECOM, LLC,                          :
                                           :
     Defendant.                            :
                                           :
```

**COOPER, District Judge**

This matter comes before the Court on a motion for attorneys' fees and expenses (the "fee application") by plaintiff AT&T Corp. ("AT&T"). AT&T requests attorneys' fees and expenses in the amount of $1,119,175.69. For the reasons stated in this memorandum opinion, we will grant the motion and award the full amount requested.

## BACKGROUND

The dispute underlying the fee application involved the breach of a federally filed tariff that governed the provision of telecommunications services by plaintiff to defendant. AT&T engages in the "provision, distribution, and sale of telecommunications products and services," including long distance and international communications services, as a common carrier under the Federal Communications Act, 47 U.S.C. § ("Section") 151 et seq. (12-29-04 Mem. Op. at 2.) JMC, which is

no longer in business, was in the business of "the design, marketing and selling of prepaid telephone calling cards." (Id.)

AT&T and JMC began negotiations in or around June 1998. (Id.) The parties entered into an agreement in September 1998, whereby AT&T would provide its Commercial Prepaid Card Service ("service") to JMC, and JMC in turn would sell prepaid phone card services ("cards") to end users. (Id.) The parties executed three documents: a Contract Tariff Order Form ("CTOF"), a Professional Services Agreement, and an Addendum to AT&T Custom Offer Between AT&T Corp. and JMC Telecom, LLC. (Id. at 3.)

Three documents filed with the Federal Communications Commission ("FCC") set forth the applicable rates, terms and conditions governing the provision of service to JMC. These were: (1) the executed CTOF, (2) Contract Tariff No. 10344 ("Contract Tariff"), based on an illustrative contract tariff prepared by the parties for this agreement, and (3) AT&T FCC Tariff No. 1 ("Tariff No. 1"), a tariff previously filed with the FCC by AT&T and referred to in both the CTOF and the Contract Tariff. (Id.) The Contract Tariff also established a minimum annual revenue commitment ("MARC") to be satisfied by JMC through its purchases of AT&T's service. (Id.)

JMC, following the execution of these documents, marketed and sold the service to end users through a card it named the "Rring Latitude" card. (Id. at 4.) JMC began selling the cards

2

in September 1998, and soon developed concerns with the service provided by AT&T. (Id.)  JMC communicated various concerns to AT&T. (Id.)

AT&T sent JMC invoices for its service beginning in September 1998. (Id.)  AT&T received a payment of $400,000 on November 2, 1998, and received no other payments from JMC. (Id.)

AT&T filed the complaint on June 4, 1999, alleging that JMC breached the Contract Tariff by incurring more than $2.3 million in AT&T service and failing to pay $1.9 million in service charges. (Id. at 5.)  AT&T also alleged that JMC owed $5,624,249.80 in shortfall damages since JMC failed to meet its MARC for the first year of the contract. (Id.)  JMC filed a second amended answer with counterclaims on July 30, 2003, alleging the following against AT&T: (1) breach of contract; (2) breach of Tariff No. 1; (3) breach of the Contract Tariff; (4) fraud; (5) negligent misrepresentation; and (6) breach of the covenant of good faith and fair dealing. (Id.)

The Court granted summary judgment in AT&T's favor on its claim against JMC, as well as on JMC's counterclaims, on December 29, 2004. (See 12-29-04 Ord. & Judg.; 12-29-04 Mem. Op.)  We entered judgment in favor of AT&T in the amount of $10,743,885.68. (12-29-04 Ord. & Judg.)

AT&T moved for attorneys' fees and expenses on January 28, 2005. (Notice of Mot.)  AT&T requests attorneys' fees and

expenses in the amount of $1,119,175.69.  (Aff. of Richard Brown filed 1-28-05 ("Brown Aff.").)  This represents: (1) $573,743.93 in attorneys' fees and $195,627.57 in expenses paid to the law firm of Pitney, Hardin LLP ("Pitney Hardin"); (2) $196,948.99 in attorneys' fees and $9,425.29 in expenses paid to the law firm of Sidley, Austin, Brown & Wood, LLP ("Sidley Austin"); and (3) $143,429.91 in expenses paid directly by AT&T to two experts, FTI Consulting and Economics and Technology, Inc.

JMC argues that the total award sought should be reduced for the following reasons: (1) the hourly rates charged by AT&T's counsel are not within the appropriate market rate; (2) the amount of hours spent on the litigation is unreasonable because AT&T is not entitled to (a) duplicative and redundant fees, (b) fees incurred in defending JMC's counterclaims, and (c) attorneys' fees for paralegals, law clerks, and legal assistants; and (3) all of AT&T's claims for expenses should be denied. (Def. Br. at 3-8.)

## DISCUSSION

### I.  Attorneys' Fees and the Lodestar Method

Attorneys' fees and expenses may be awarded to a prevailing party in federal litigation where authorized by statute, court rule, or contract. Apple Corps Ltd. v. Intl. Collectors Socy., 25 F.Supp.2d 480, 484 (D.N.J. 1998).  AT&T's fee application is based on the Contract Tariff.  (See Brown Aff. at 6; Def. Br. at

4

2.)  The Contract Tariff incorporates Tariff No. 1, which provides in Section 2.5.3: "In the event [AT&T] incurs fees and expenses, including attorney's fees, in collecting or attempting to collect, any charges owed by [JMC], [JMC] shall be liable to [AT&T] for the payment of all such fees and expenses incurred." (Brown Aff. at 6.)  AT&T's claim against JMC was based on AT&T's attempt to collect service and shortfall charges owed by JMC under the Contract Tariff.  (12-29-04 Mem. Op. at 20-27.)  We granted summary judgment in AT&T's favor on this claim.  (12-29-04 Ord. & Judg.)  We find, therefore, that AT&T is a prevailing party and may be awarded attorneys' fees and expenses pursuant to the Contract Tariff.

The parties agree that the proper approach for determining an award of attorneys' fees here is the "lodestar" approach, which requires multiplying the number of hours reasonably expended by a reasonable hourly rate.  (Brown Aff. at 7; Def. Br. at 2.)  See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Loughner v. Univ. of Pittsburgh, 260 F.3d 173, 177-78 (3d Cir. 2001); P.G. v. Brick Twp. Bd. of Educ., 124 F.Supp.2d 251, 261 (D.N.J. 2000).  In determining the lodestar amount, the Court must "carefully and critically evaluate the hours and the hourly rate set forth by counsel."  J & J Snack Foods, Corp. v. Earthgrains Co., No. 00-6230, 2003 WL 21051711, at *6 (D.N.J. May 9, 2003).  The party seeking attorneys' fees has the burden to

prove that the request is reasonable, and therefore must submit evidence to support the hours worked and the rates claimed.  Id. The Court has discretion in deciding which fees are reasonable, but cannot decrease a fee award based on factors not raised at all by the adverse party.  Id.  While the adverse party must raise any objections, that party need not challenge every specific time entry believed to be unreasonable.  Id.  The Court performs a three-step analysis under the lodestar method: We determine, considering AT&T's evidence and JMC's objections, (1) a reasonable hourly rate, (2) the number of hours reasonably expended, which we multiply by the reasonable hourly rate, and (3) whether any final adjustment is warranted.  Id.

## II.  Reasonable Hourly Rate

A reasonable hourly rate is calculated according to the prevailing market rates in the community.  Washington v. Philadelphia County Ct. of Common Pleas, 89 F.3d 1031, 1035 (3d Cir. 1996).  The party requesting fees bears the burden of "establishing by way of satisfactory evidence, in addition to [the] attorney's own affidavits, that the requested hourly rates meet this standard."  Id. (citation and quotations omitted).  The prevailing party must demonstrate the community billing rate "charged by attorneys of equivalent skill and experience performing work of similar complexity."  P.G., 124 F.Supp.2d at 261 (citation and quotations omitted).  The party "normally

6

satisfies this burden by submitting the affidavits of other attorneys in the relevant legal community, attesting to the range of prevailing rates charged by attorneys with similar skill and experience." Id.  Once the party seeking fees has met this burden, "the opponent may contest the prevailing party's prima facie case only with record evidence." Id.  If the opponent fails to do so, the court may not reduce the requested rate. Id.

The Court finds that AT&T has satisfied its initial burden to show that the requested hourly rates are reasonable.  AT&T was represented by two law firms in this litigation, and we will consider each firm's hourly rates in turn.

Pitney Hardin has represented AT&T in this matter since 1999.  (Brown Aff. at 1-6.)  According to the affidavit of Richard Brown, a partner at Pitney Hardin who was in charge of the litigation of this case, Pitney Hardin's billing rate for each of the nine attorneys, two summer associates, and eight paralegals who worked on this case was (1) commensurate with the billing rates for other attorneys, law students, and professionals with similar skill and experience, and (2) the customary rate charged by Pitney Hardin to AT&T and other clients for their respective services.  (Brown Aff. at 10-14.)  AT&T has submitted an affidavit from an attorney in the relevant legal community attesting to the range of prevailing rates charged by comparable law firms.  (Towey Aff. at 1-3.)  Robert Towey, a New

7

Jersey attorney whose practice includes complex commercial litigation including disputes concerning telecommunications and who has represented AT&T, stated that Pitney Hardin's rates were commensurate with the prevailing rates charged by firms in northern New Jersey for litigation matters of this complexity. (Id. at 2.)  Specifically, Towey stated that Pitney Hardin's rates for the named partners, associates, summer associates, and paralegals were within the range of rates charged by similar firms for individuals of their respective experience.  (Id. at 3.)

Sidley Austin was retained by AT&T to assist Pitney Hardin in this action in 2003.  (Guerra Aff. at 1-2.)  Sidley Austin has been "AT&T's principal national outside counsel and thus has substantial expertise in federal telecommunications law and is very familiar with AT&T's business."  (Id.)  According to the affidavit of Joseph Guerra, a partner at Sidley Austin who shared in the responsibility of handling this case for the firm, Sidley Austin's billing rates for its attorneys and legal assistant who worked on this case (1) were commensurate with the billing rates for other attorneys and professionals with similar skill and experience, and (2) reflected a discount given to AT&T of up to 15%.  (Id. at 5-10.)  AT&T has submitted an affidavit from an attorney in the relevant legal community attesting to the range of prevailing rates charged by comparable law firms.  (Schneider

Aff. at 1-3.) Mark Schneider, a Washington, D.C. attorney with extensive experience in telecommunications law, stated that Sidley Austin's rates were commensurate with the prevailing rates charged by Washington, D.C. offices of national firms for a matter of this complexity. (Id. at 2.)

JMC does not adequately challenge AT&T's prima facie showing. JMC failed to submit any affidavits or certifications concerning the proper prevailing rates. JMC argues only that AT&T has not based its request on the appropriate market. Regarding Pitney Hardin's rates, JMC argues that the state of New Jersey constitutes a single market and therefore AT&T's reference to a "northern New Jersey" market is inappropriate. (Def. Br. at 3-4.) JMC bases this argument on Pub. Interest Research Group of N.J., Inc. v. Windall, 51 F.3d 1179 (3d Cir. 1995). The Windall court affirmed the district court's order adopting the entire District of New Jersey as the appropriate market for rates, rather than the "southern New Jersey" market suggested by the opposing party. Id. at 1187-88. In so doing, the Third Circuit noted that determination of the hourly rate in the applicable market is a finding of fact to be made at the district court level. Id. at 1188 n.12. The record in that case lacked any evidence from which the court could infer the geographic boundaries of a southern New Jersey market for legal services. Id. at 1187-88. Here, the record lacks any evidence to suggest a

9

distinction between the "northern New Jersey" market endorsed by AT&T and the "all of New Jersey" market endorsed by JMC. Because JMC has failed to show how adopting its suggested market would affect the reasonable hourly rate suggested by AT&T, which is supported by the record, we accept the market as defined by AT&T. We therefore find that Pitney Hardin's hourly rates are reasonable.

JMC makes a similar argument as to Sidley Austin's hourly rates, i.e., AT&T refers to the Washington, D.C. market rather than the New Jersey market. (Def. Br. at 3-4.) JMC argues that the "community is the forum in which the litigation occurs rather than the forum from which visiting lawyers come, unless special expertise of counsel from another district is necessary or local counsel are unwilling to handle the case." (Id.) See Windall, 51 F.3d at 1186-88; Interfaith Cmty. Org. v. Honeywell Intl., Inc., 336 F.Supp.2d 370, 384 (D.N.J. 2004). JMC does not argue, however, that Sidley Austin did not bring special expertise and AT&T argues that the firm did bring needed expertise to the case. (Def. Br. at 3-4; Pl. Reply at 1-2.) Neither does JMC make any attempt to show that the market rate in Washington, D.C. is different than the market rate in New Jersey. The record lacks any basis from which the Court could determine that adopting JMC's proposed market would affect the reasonable rates as

evidenced by AT&T's affidavits.  We therefore find that Sidley Austin's hourly rates are reasonable.

### III. Reasonable Number of Hours

The second step in the lodestar calculation requires the Court to determine what time was reasonably extended on the matter.  J & J Snack Foods, 2003 WL 21051711 at *8.  "Hours that are not reasonably expended – those which are excessive, redundant, or otherwise unnecessary – are not compensated by the court."  Id.  JMC argues that the amount of hours expended is unreasonable because AT&T is not entitled to (a) duplicative and redundant fees, (b) fees incurred in defending JMC's counterclaims, and (c) attorneys' fees for paralegals, law clerks, and legal assistants.  (Def. Br. at 3-8.)  We will consider each argument in turn.

####　A.　Duplicative and Redundant Fees

JMC argues that AT&T's retention of Sidley Austin resulted in duplicative and redundant fees.  (Def. Br. at 5-6.)  JMC first argues that "AT&T does not explain why it was necessary to retain an additional firm to assist with the litigation."  (Id.)  JMC cites no authority for the proposition that AT&T must explain why it retained additional counsel.[1]  More importantly, JMC does not

---

[1] JMC is no doubt aware that representation by multiple counsel may be appropriate in some cases. JMC, for example, is represented by three law firms in this action.  (See Def. Br. (listing firms: Messina & Laffey, P.C., of New Jersey; the Alioto Law Firm, of California; and Forman & Brasso, of California).)

11

show how the retention of Sidley Austin caused any duplicative or redundant fees or by how much the requested fees should be reduced.

JMC argues that hours were expended "getting [Sidley Austin] up to speed on the case" and that the work Sidley Austin did "was reviewed and discussed at length with [Pitney Hardin]." (Id.) JMC cites only a few instances of specific billing to support this argument. These examples are: (1) both firms billed for conference calls to discuss a summary judgment motion on October 8, 27, and 28, 2003; and (2) in "mid-November 2003" both firms billed for editing the motion and revising each other's work. (Id.) JMC offers no explanation or evidence as to why this collaboration was redundant and duplicative. AT&T retained Sidley Austin for, among other reasons, the specific purpose of working with Pitney Hardin on the summary judgment motion. (Guerra Aff. at 1-2.) The firms divided responsibilities; for example, Pitney Hardin attorneys drafted some sections of the summary judgment motion and Sidley Austin attorneys drafted other sections. (Id.; Brown Aff. at 5-6.) We find that JMC has failed to show that the disputed charges were the result of redundant or duplicative billing.

    B.   Fees for Defending JMC's Counterclaims

JMC argues that, because the Contract Tariff is the basis for AT&T's fee application, AT&T is not entitled to attorneys'

fees incurred in defending against JMC's counterclaims. (Id. at 6.) JMC states: "Some of JMC's counterclaims are unrelated to the Contract Tariff." (Id.) JMC lists, as examples, its claims based on fraud and negligent misrepresentation. (Id.) However, JMC also asserted counterclaims based on: breach of the Contract Tariff; breach of Tariff No. 1; breach of contract; and breach of the covenant of good faith and fair dealing. (12-29-04 Mem. Op.) In making this argument, JMC makes no reference to any bill from either law firm. (Def. Br. at 6.) JMC "bears the burden of challenging the reasonableness of [AT&T's] fee application with sufficient specificity as to give the applicant notice and an opportunity to respond." Interfaith Cmty. Org. v. Honeywell Intl., Inc., No. 95-2097, 2005 WL 1683746, slip op. at *2-*3 (D.N.J. June 15, 2005). JMC fails to meet that burden here, especially where any facts giving rise to the asserted "unrelated" counterclaims would also have been at issue in litigating the Contract Tariff.

    C.   Fees for Non-Attorneys and Expenses

JMC argues that AT&T is not entitled to recover fees for services provided by paralegals, law clerks, and legal assistants. (Def. Br. at 6-7.) The Contract Tariff and Tariff No. 1, however, provide in Section 2.5.3: "In the event [AT&T] incurs fees and expenses, including attorney's fees, in collecting or attempting to collect, any charges owed by [JMC],

[JMC] shall be liable to [AT&T] for the payment of all such fees and expenses incurred." (Brown Aff. at 6.) JMC offers no argument that this broad language does not include the types of non-attorney service fees it challenges here. (See Def. Br. at 6-7.) We find that AT&T is entitled to fees for services provided by paralegals, law clerks, and legal assistants pursuant to the Contract Tariff.

We find also that AT&T is entitled to expenses pursuant to the Contract Tariff. JMC argues that "absent a contract or explicit statute to the contrary" AT&T is not entitled to such expenses pursuant to 28 U.S.C. § 1920. (Def. Br. at 7-8.) JMC's contract with AT&T, i.e. the Contract Tariff, states clearly that JMC shall be liable to AT&T for the payment of all expenses incurred in any attempt to collect charges owed by JMC. (Brown Aff. at 6.) JMC does not dispute this clear language or argue that the requested expenses are not recoverable pursuant to the Contract Tariff. (See Def. Br. at 7-8.) We find that AT&T is entitled to expenses under the Contract Tariff. We have reviewed AT&T's requests for expenses, (see Brown Aff. at 14-15; Guerra Aff. at 10-11; Salerno Aff. at 1-4) and find that AT&T's requests for expenses are reasonable.

**IV. Adjustments**

The Court will make no adjustments to the amount of attorneys' fees and expenses requested by AT&T because (1) AT&T

14

has met its burden to show that such fees and expenses were reasonable and (2) JMC has not shown that either the rates charged or the numbers of hours expended by either firm were unreasonable.

## CONCLUSION

The Court, for the reasons discussed <u>supra</u>, will grant AT&T's fee application in full.  We will issue an appropriate order and judgment.


                                            s/ Mary L. Cooper
                                          **MARY L. COOPER**
                                          United States District Judge